**United States District Court**
**District of Connecticut**

**Michael Friend**,
*Plaintiff*

*v.*

**Richard Gasparino**,
*Defendant*

Docket No. 18-cv-_____

October 22, 2018

**Complaint**

In this suit, plaintiff Michael Friend seeks redress for a municipal police employee's decision to harass and arrest him for warning drivers about ticketing for cellphone use. It should not have to be done, but Mr. Friend seeks damages to remind the defendant that public scrutiny of police is a mandatory component of democracy.

### *Jurisdiction*

1. The United States District Court has subject matter jurisdiction over this dispute because the plaintiff's claims arise under the law of the United States. 28 U.S.C. § 1331.

2. Venue is proper in the District of Connecticut because all of the events giving rise to the plaintiff's claims transpired within it. 28 U.S.C. § 1391(b)(2).

### *Parties*

3. Plaintiff Michael Friend is a resident of Stamford, Connecticut.

4. To make ends meet, Mr. Friend works several different jobs, including removing junk, and delivering food in the evenings for Grub Hub and Uber Eats.

5. Defendant Richard Gasparino is an employee of the Stamford, Connecticut municipal police department.

*Facts*

6. At around 4PM on April 12, 2018, near the intersection of Hope and Greenway Streets in Stamford, Mr. Friend noticed a number of municipal police employees issuing tickets to drivers for allegedly using their cell phones while driving. *See generally* Conn. Gen. Stat. § 14-296aa(b)(deeming it a traffic violation to "operate a motor vehicle . . . while using a hand-held mobile telephone to engage in a call or while using a mobile electronic device").

7. Mr. Friend saw the defendant standing behind a telephone pole on the side of Hope Street watching traffic coming north, and radioing ahead to his colleagues whenever he alleged a driver to have been using a cell phone in violation of the law.

8. Mr. Friend thought that the way the employees were issuing tickets was underhanded.

9. So, using a piece of paper and a marker, he made a sign reading "Cops Ahead."

10. Mr. Friend stood on the sidewalk next to Hope Street, near its intersection with Cushing Street, and displayed his sign to passing motorists.

11. When doing so, Mr. Friend was standing two blocks south of where the Stamford police were giving out tickets to motorists.

12. Shortly thereafter, the defendant approached Mr. Friend and snatched the sign from him.

13. Mr. Friend began video recording the defendant with his phone, as he thought the defendant was behaving illegally.

14. The defendant told Mr. Friend that he was "interfering with our police investigation" and told Friend to leave the spot where he was standing. Richard

Gasparino, Police Report 2 (Apr. 12, 2018) (attached as Appendix A).

15. The defendant threatened Mr. Friend with arrest if he did not move.

16. Mr. Friend walked away, went to his car, and retrieved a piece of paper with which to make another sign.

17. He walked down Hope Street to the Food Bag gas station and convenience store, where he borrowed a marker from the employees and made a new sign.

18. He stood on the sidewalk next to Hope Street in front of the Food Bag and displayed his sign.

19. The Food Bag, located at 954 Hope Street, is three blocks south of where the defendant and his co-workers were giving out cellphone tickets.

20. Some time after that, a Food Bag employee came outside and gave Mr. Friend a larger sign made out of cardboard, which Mr. Friend displayed to passing cars.

21. About a half-hour later, the defendant traveled to where Mr. Friend was standing on the sidewalk outside the Food Bag.

22. Seeing the defendant approach and fearing what the defendant would do to him, Mr. Friend took out his phone to begin video recording.

23. However, the defendant snatched Mr. Friend's phone and stopped Friend from recording because he claimed to want to "protect [him]self from any false claims of physical abuse." App. A at 2.

24. The defendant also seized another phone that Mr. Friend had in his pocket.

25. The defendant arrested Mr. Friend for "interfering with our investigation," *id.*, handcuffed him, and had him transported to the Stamford police station by another employee, whose surname is Deems.

26. On the ride to the police station, Deems told Mr. Friend that he attracted police

3

attention because he was "interfering with our livelihood."

27. Deems explained to Mr. Friend that the cellphone sting was operated as an overtime assignment, funded by a federal grant which would require the Stamford police to issue a certain number of tickets in order for the grant to be renewed.

28. By warning motorists, Deems claimed, Mr. Friend was decreasing the number of tickets that the Stamford employees could issue, and therefore decreasing their chances of earning overtime on a cellphone sting grant in the future.

29. The defendant echoed Deems's objection, complaining that while Mr. Friend was holding up his sign on the sidewalk, "he was tipping off motorists and due to this [police] officers were not observing as many violations as they should be," *i.e.*, that more people were following the law because of Mr. Friend.  App. A at 2.

30. The defendant also complained that the overtime assignment "had to be stopped due to Friend because of man power issues." *Id.*

31. Once at the police station, the defendant charged Mr. Friend with misdemeanor interference, Conn. Gen. Stat. § 53a-167a(a).

32. Although Mr. Friend was facing a single criminal charge, has no criminal history and lives in Stamford, the defendant set a financial condition of Friend's bail at $25,000.  App. A at 2.

33. Unable to afford that amount, Mr. Friend was held in the Stamford police station.

34. At around 1:30AM on the morning of April 13th, a bail commissioner working for the Connecticut judiciary interviewed Mr. Friend at his cell.

35. After listening to Mr. Friend's answers, the bail commissioner changed Mr. Friend's financial conditions from $25,000 to zero, releasing him on a promise to

appear in court at a later date.

36. Mr. Friend was released from the Stamford police station around 2AM on April 13th.

37. Mr. Friend was not able to work his food delivery jobs that evening because he was under arrest at the Stamford police station.

38. Because the defendant confiscated his cellphone, on which he relies to work his junk removal and food delivery jobs, Mr. Friend was forced to purchase a replacement phone later on the morning April 13th.

39. Additionally, Mr. Friend hired a criminal defense lawyer to represent him on the charge laid against him by the defendant.

40. On May 7, 2018, Mr. Friend and his defense attorney attended the Connecticut Superior Court for his scheduled arraignment. They were prepared to plead not guilty, and to argue a motion for the return of Mr. Friend's property.

41. Instead, when Mr. Friend's case was called, the prosecution entered a *nolle prosequi* and explained to the court that Mr. Friend's signs "actually . . . help[ed] the police do a better job than they anticipated because when [drivers] saw the signs, they got off their cell phones."

42. Mr. Friend's attorney made an oral motion for the charge to be dismissed–to which the prosecution did not object–which the court granted, ending the case.

**Count One: Violation of the First Amendment**

43. By taking Mr. Friend's first "Cops Ahead" sign from him, the defendant violated Mr. Friend's right to free speech.

### Count Two: Violation of the Fourth Amendment

44. By seizing Mr. Friend's first "Cops Ahead" sign, the defendant violated Mr. Friend's Fourth Amendment right to be free from unreasonable seizure of his belongings.

### Count Three: Violation of the First Amendment

45. By forcing Mr. Friend to move from the sidewalk near the intersection of Hope and Cushing under threat of arrest, the defendant contravened his right to free speech.

### Count Four: Violation of the First Amendment

46. By preventing Mr. Friend from video recording the police outside of the Food Bag, the defendant violated Mr. Friend's First Amendment right to receive and memorialize information.

### Count Five: Violation of the Fourth Amendment

47. By seizing Mr. Friend's cellphone to allegedly prevent bogus claims of physical abuse, the defendant contravened Mr. Friend's Fourth Amendment right to be free from unreasonable seizure of his belongings.

### Count Six: Violation of the Fourth Amendment

48. By arresting Mr. Friend without probable cause to do so, the defendant violated Mr. Friend's Fourth Amendment right against unreasonable seizure.

### Count Seven: Violation of the Fourth Amendment

49. By maliciously causing a prosecution against Mr. Friend to commence without probable cause, the defendant violated his right against unreasonable seizure.

### Count Eight: Violation of the First Amendment

50. By arresting Mr. Friend for holding a sign on a public sidewalk, the defendant violated his First Amendment right to free speech.

### *Request for Relief*

51. Accordingly, Mr. Friend is entitled to have this Court:

    (a) award him damages for the violation of his rights,

    (b) award him punitive damages for the defendant's willful and malicious conduct,

    (c) order the defendant to repay his reasonable costs and fees in accordance with 42 U.S.C. § 1988, and

    (d) order any further relief as justice requires.

52. Additionally, Mr. Friend demands a jury trial on all disputes of material fact.

*(signatures follow on next page)*

/s/ Dan Barrett
Dan Barrett (# 29816)
ACLU Foundation of Connecticut
765 Asylum Avenue, 1st Floor
Hartford, CT 065105
(860) 471-8471
e-filings@acluct.org

 /s/ Joseph Sastre
Joseph R. Sastre (# ct28621)
The Law Office of Joseph R. Sastre, LLC
67 Chestnut Street
Bristol, CT
06010
(860) 261-5643
joseph.sastre@gmail.com