## United States District Court
## District of Connecticut

**Michael Friend**,
*Plaintiff*

v.

**Richard Gasparino** and the
**City of Stamford**,
*Defendants*

No. 18-cv-1736

August 13, 2019

## Amended Complaint

In this suit, plaintiff Michael Friend seeks redress for a municipal police employee's decision to harass and arrest him for warning drivers about ticketing for cellphone use, and for the municipality's unconstitutional bail-setting practices. It should not have to be done, but Mr. Friend seeks damages to remind the defendants that public scrutiny of police is a mandatory component of democracy, and that pretrial liberty is the expectation of a free people.

### *Jurisdiction*

1. The United States District Court has subject matter jurisdiction over this dispute because the plaintiff's claims arise under the law of the United States. 28 U.S.C. § 1331.

2. Venue is proper in the District of Connecticut because all of the events giving rise to the plaintiff's claims transpired within it. 28 U.S.C. § 1391(b)(2).

### *Parties*

3. Plaintiff Michael Friend is a resident of Stamford, Connecticut.

4. To make ends meet, Mr. Friend works several different jobs, including removing junk, and delivering food in the evenings for Grub Hub and Uber Eats.

1

5. Defendant Richard Gasparino is an employee of the Stamford, Connecticut municipal police department.

6. Defendant City of Stamford is a Connecticut municipality.

### *Facts*

7. At around 4PM on April 12, 2018, near the intersection of Hope and Greenway Streets in Stamford, Mr. Friend noticed a number of municipal police employees issuing tickets to drivers for allegedly using their cell phones while driving. *See generally* Conn. Gen. Stat. § 14-296aa(b)(deeming it a traffic violation to "operate a motor vehicle . . . while using a hand-held mobile telephone to engage in a call or while using a mobile electronic device").

8. Mr. Friend saw Richard Gasparino standing behind a pole on the side of Hope Street watching traffic coming north, and radioing ahead to his colleagues whenever he alleged a driver to have been using a cell phone in violation of the law.

9. Mr. Friend thought that the way the employees were issuing tickets was underhanded.

10. So, using a piece of paper and a marker, he made a sign reading "Cops Ahead."

11. Mr. Friend stood on the sidewalk next to Hope Street, near its intersection with Cushing Street, and displayed his sign to passing motorists.

12. When doing so, Mr. Friend was standing two blocks south of where the Stamford police were giving out tickets to motorists.

13. Shortly thereafter, Gasparino approached Mr. Friend and snatched the sign from him.

14. The defendant told Mr. Friend that he was "interfering with our police investigation" and told Friend to leave the spot where he was standing. Richard Gasparino, Police Report 2 (Apr. 12, 2018) (attached as Appendix A).

15. Mr. Friend walked away, went to his car, and retrieved a piece of paper with which to make another sign.

16. He walked down Hope Street to the Food Bag gas station and convenience store, where he borrowed a marker from the employees and made a new sign reading "Cops Ahead."

17. He stood on the sidewalk next to Hope Street in front of the Food Bag and displayed his sign.

18. The Food Bag, located at 954 Hope Street, is three blocks south of where the defendant and his co-workers were giving out cellphone tickets.

19. Some time after that, a Food Bag employee came outside and gave Mr. Friend a larger "Cops Ahead" sign made out of cardboard, which Mr. Friend displayed to passing cars.

20. About a half-hour later, Gasparino traveled to where Mr. Friend was standing on the sidewalk outside the Food Bag.

21. Gasparino arrested Mr. Friend for "interfering with our investigation," *id.*, handcuffed him, and had him transported to the Stamford police station by another employee, whose surname is Deems.

22. During the arrest, Gasparino confiscated two cell phones that Mr. Friend had with him, including one that Mr. Friend used to conduct his junk removal business and work his food delivery jobs.

23. On the ride to the police station, Deems told Mr. Friend that he attracted police attention because he was "interfering with our livelihood."

3

24. Deems explained to Mr. Friend that the cellphone sting was operated as an overtime assignment, funded by a federal grant which would require the Stamford police to issue a certain number of tickets in order for the grant to be renewed.

25. By warning motorists, Deems claimed, Mr. Friend was decreasing the number of tickets that the Stamford employees could issue, and therefore decreasing their chances of earning overtime on a cellphone sting grant in the future.

26. Gasparino echoed Deems's objection, complaining that while Mr. Friend was holding up his sign on the sidewalk, "he was tipping off motorists and due to this [police] officers were not observing as many violations as they should be," *i.e.*, that more people were following the law because of Mr. Friend.  App. A at 2.

27. Gasparino also complained that the overtime assignment "had to be stopped due to Friend because of man power issues." *Id.*

28. At the police station, Gasparino charged Mr. Friend with misdemeanor interference, Conn. Gen. Stat. § 53a-167a(a).

29. The City of Stamford is permitted by law to set bail for people arrested for bail-eligible offenses.

30. Stamford is empowered do so through its "chief of police, or the chief's authorized designee."  Conn. Gen. Stat. § 54-63c(a).

31. Stamford's police chief has, in turn, authorized both police desk sergeants and other supervisory employees to set bail for eligible arrestees.

32. While Mr. Friend was in Stamford police custody on April 12 and 13, 2018, Defendant Gasparino was authorized to set bail for him.

33. Although Mr. Friend was facing a single criminal charge, has no criminal history and has lived in Stamford for almost his entire adult life, Gasparino set a financial condition of Friend's bail at $25,000. App. A at 2.

34. When setting Mr. Friend's bail conditions, Gasparino based his decision on Mr. Friend's "actions, by his actions on scene, and his, honestly, his personality . . .."

35. Under the policies and/or customs of Stamford's police department, there was no method by which Mr. Friend could appeal Gasparino's bail decision to any other Stamford employee or agency. Unable to afford the $25,000 bail amount, Mr. Friend was held in the Stamford police station.

36. At around 1:30AM on the morning of April 13th, a bail commissioner working for the Connecticut judiciary interviewed Mr. Friend at his cell.

37. After listening to Mr. Friend's answers, the bail commissioner changed Mr. Friend's financial conditions from $25,000 to zero, releasing him on a promise to appear in court at a later date.

38. In accordance with the policies and/or customs of Stamford's police department, Gasparino frequently set bail for arrestees.

39. However, Stamford provides its police employees with no training about how to set bail conditions other than by instructing them to ensure that an arrestee will appear at court.

40. As a result, Gasparino's bail decisions have been modified by a bail commissioner "all the time," in his own telling.

41. Mr. Friend was released from the Stamford police station around 2AM on April 13th.

42. Mr. Friend was not able to work his food delivery jobs that evening because he was under arrest at the Stamford police station.

Case 3:18-cv-01736-WWE   Document 34   Filed 08/13/19   Page 6 of 9

43. Because Gasparino confiscated his cellphone, on which he relies to work his junk removal and food delivery jobs, Mr. Friend was forced to purchase a replacement phone later on the morning April 13th.

44. Additionally, Mr. Friend hired a criminal defense lawyer to represent him on the charge laid against him.

45. As a result of the criminal charge against him, Mr. Friend attended the Connecticut Superior Court in Stamford twice for proceedings.

46. On May 7, 2018, Mr. Friend and his defense attorney attended the superior court.

47. When Mr. Friend's case was called, the prosecution entered a nolle prosequi and explained to the court that Mr. Friend's signs "actually . . . help[ed] the police do a better job than they anticipated because when [drivers] saw the signs, they got off their cell phones."

48. The court thereafter granted Mr. Friend's oral motion for dismissal.

49. The criminal case against Mr. Friend concluded without his being convicted.

### Count One: Violation of the First Amendment

50. By stopping him from speaking when he took Mr. Friend's first "Cops Ahead" sign from him and made him move from the sidewalk, Richard Gasparino violated Mr. Friend's right to free speech.

### Count Two: Violation of the First Amendment

51. By arresting Mr. Friend for holding a sign on a public sidewalk, Richard Gasparino violated his First Amendment right to free speech.

6

**Count Three: Violation of the Fourth Amendment**

52. By maliciously causing a prosecution against Mr. Friend to commence without probable cause, Richard Gasparino violated his right against unreasonable seizure.

**Count Four:  Violation of the Fourteenth Amendment Right to Procedural Due Process**

53. By using an arbitrary bail-setting procedure that resulted in an absurd $25,000 obligation on Mr. Friend and prolonged his detention for hours, the City of Stamford violated his right to procedural due process.

**Count Five:  Violation of the Fourteenth Amendment Rights to Equal Protection and Due Process**

54. By jailing Mr. Friend for want of $25,000 without any meaningful inquiry into his ability to pay such amount, the City of Stamford enforced a system of wealth-based detention against him in violation of his Equal Protection and Due Process rights to pretrial liberty.

**Request for Relief**

55. Accordingly, Mr. Friend is entitled to have this Court:

    a. award him damages for the violation of his rights,

    b. award him punitive damages for Richard Gasparino's willful and malicious conduct,

    c. order the defendants to repay his reasonable costs and fees in accordance with 42 U.S.C. § 1988, and

    d. order any further relief as justice requires.

56. Additionally, Mr. Friend demands a jury trial on all disputes of material fact.

    /s/ Dan Barrett
Dan Barrett (# 29816)
ACLU Foundation of Connecticut
765 Asylum Avenue, 1st Floor
Hartford, CT
06105
(860) 471-8471
e-filings@acluct.org

  /s/ Joseph Sastre
Joseph R. Sastre (# ct28621)
The Law Office of Joseph R. Sastre, LLC
67 Chestnut Street
Bristol, CT
06010
(860) 261-5643
joseph.sastre@gmail.com

## Certificate of Service

I certify that a copy of foregoing was filed electronically on the date stamped upon it by the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through CM/ECF.

    ___Dan Barrett___