## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL FRIEND                          :
  plaintiff,                  :
                                :
                                :
v.                                      : Civil No. 3:18-CV-1736(AVC)
                                :
                                :
CITY OF NEW HAVEN POLICE                 :
DEPARTMENT, et al.,                      :
  defendants.                         :

## RULING ON THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This is an action for damages brought pursuant to 42 U.S.C. section 1983,[1] to redress alleged violations of the plaintiff's First and Fourteenth Amendment rights and for malicious prosecution, arising out of the plaintiff's arrest on April 12, 2018. The complaint also alleges claims for failure to correct a pattern of unconstitutional conduct and failure to train and supervise. The plaintiff, Michael Friend, brings this action against Stamford police sergeant Richard Gasparino and the City of Stamford (hereinafter "Stamford"). Friend, Gasparino and Stamford have filed motions for summary judgment, arguing that they are entitled to judgment as a matter of law. For the

---

[1] 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

reasons hereinafter set forth, the plaintiff's motion is denied and the defendants' motions are granted.

## FACTS

An examination of the complaint, pleadings, local rule 56 statements, exhibits accompanying the motions for summary judgment and responses thereto, discloses the following undisputed facts:

"Friend works several different jobs, including removing junk, and delivering food in the evenings for Grubhub and Uber Eats." He "has no criminal history and has lived in Stamford for his entire adult life."

At all relevant times, the defendant, Richard Gasparino was a police sergeant employed by Stamford Police Department, in Stamford, Connecticut.

The defendant, the city of Stamford is a municipality in the state of Connecticut.

"On April 2, 2018, Stamford applied to the Connecticut Department of Transportation's highway safety office for $57,600 to pay for a project entitled "FY 2018 DDHVE," standing for "Distracted Driving High Visibility Enforcement." The enforcement effort was "intended to enforce the law prohibiting the use of cell phones while driving to reduce motor vehicle collisions." Stamford "sought to stage the enforcement, in relevant part, on April 12, 2018 at the intersection of Hope and

Greenway Streets," in Stamford, Connecticut. The DOT approved
the request.[2]

On April 12, 2018, at approximately 4 p.m., Stamford
police, including Gasparino, conducted the distracted driving
enforcement operation.  The plaintiff, Friend, saw "Gasparino
standing behind a column on the side of Hope Street watching
traffic coming north.  While watching traffic from the side of
Hope Street, Gasparino was radioing ahead to his colleagues
whenever he alleged a driver to have been using a cell phone."

Friend "objected" to the manner in which police were
conducting the operation and he "wanted to alert motorists to
the fact that the police were up ahead." Friend made a sign that
read "Cops Ahead." He "displayed the sign while standing on the
sidewalk, 2 blocks from the defendants' operation."  Gasparino
"approached . . . Friend and took the sign from him." Gasparino
told Friend that he was "interfering with our police
investigation." Friend also states that Gasparino told him he
should "leave the spot where he was standing." Stamford denies
this fact.  Both of the defendants state that Gasparino told
Friend not to come back with another sign and if he did, he

---

[2] "Stamford's request promised to conform with the Department's requirement
that stings 'take place during daylight hours,' and that participating police
agencies "take part in earned media activity related to DDHVE."  Such
"[s]uggested media activities included '[h]osting a kick-off press event,'
'[c]onducting ride-alongs or interviews with media at enforcement locations,'
and '[n]otification of media outlets through the use of interview
opportunities, press releases, and media advisories.'"

would be arrested.  During this confrontation, Friend asked

questions about Gasparino, "asked [] Gssparino why he was

scowling at him; why he was so angry; and why he never smiles."

Friend went to his vehicle to retrieve another piece of

paper so that he could make another sign.  He went to a nearby

convenience store where, according to Friend, he borrowed a

marker and made another sign that read "Cops Ahead." He again

displayed his sign in the vicinity of the defendants' operation.

Subsequently, an employee of the convenience store gave Friend a

larger sign that also read "Cops Ahead."  Friend displayed the

larger sign.

Approximately thirty minutes later, at 4:30 p.m., Gasparino

arrested Friend for "interfering" with the distracted driving

investigation.  "Gasparino thought that while Mr. Friend was

holding up his sign on the sidewalk, 'he was tipping off

motorists and due to this officers were not observing as many

violations as they should be.'"  Gasparino charged Friend with

interference in violation of Conn. Gen. Stat § 53a-167a(a), a

misdemeanor offense.  Another officer brought Friend to the

Stamford police station.

On April 12, 2018, while Friend was at the Stamford police

station, sergeant Steven Perrotta was working as the desk

sergeant.  Only the booking officer interviewed Friend.  He

inquired about Friend's residence, employment, and "questions

similar to the ones later asked of him by the bail commissioner," but the booking officer did not specifically inquire whether Friend could afford bail. Gasparino set Friend's bail at $25,000, without interviewing him and notified Friend orally of the amount. Although Friend states that Gasparino alone set his bail, Stamford denies this fact and states that the desk sergeant, sergeant Perrotta, "would have reviewed the bail set by Gasparino, as was his practice." At the time, Gasparino was a sergeant and was authorized to set bail and did so "several time a week." Some factors he considers are "the arrestee's criminal history, the severity of the charges, and 'the way the person act[s].'" Gasparino testified that in this case, he considered Friend's "actions, by his actions on scene, and his, honestly, his personality . . . ." The bail commissioner has modified Gasparino's decisions on bail on "several" occasions.

Friend states that he had no way to appeal this decision. Stamford denies this fact and states that Friend could have "request[ed] to speak with the [d]esk [s]ergeant or another Stamford employee about the bail . . . ."

Friend did not post the bail amount and was held at the police station.

In the early morning hours of April 13, 2018, at 1:30am, the bail commissioner interviewed Friend, as is required when an

arrestee cannot post bail. Friend states that Stamford does not notify the bail commissioner[3] if an arrestee cannot make bail. Stamford states that the commissioner "is notified when he calls and/or when he comes in." "The bail commissioner calls the police department a couple of times a night to see who is there." The commissioner questioned Friend concerning factors he considers in reviewing bail, including the severity of the crime, marital status, employment, schooling, residence, criminal history, the nature of the offense in regard to the arrestee's likelihood of appearance and the arrestee's "character and mental condition." The commissioner changed the amount of bail to zero and released Friend on a promise to appear.  Friend was released at approximately 2 a.m.

While he was held at the Stamford police station on the evening of April 12 and early morning hours of April 13, 2018, Friend was not able to work his food delivery job. Additionally, because police confiscated his cell phone when he was arrested, Friend had to purchase a replacement phone after he was released.

---

[3] "The bail commissioner has the authority to override what the police officer has set with regard to a bond.  'That's what [they] do, bond reviews . . . .'" A bail commissioner attends a multiple month Bail Academy before beginning his/her job, learning in part how to use the forms they are required to use when interviewing arrestees and reviewing bail set by the police.  Further, bail commissioners "regularly set[] a bond that is different than the one set by the police throughout Connecticiut."  If a bail commissioner reviews bail and sets a new amount that the arrestee cannot post, the arrestee has the right to a probable cause hearing in court, within forty-eight hours.

Friend hired a criminal defense lawyer to defend him against the charges arising from the April 12, 2018 arrest. Friend attended two proceedings related to the charges. On April 26, 2018, Friend attended his arraignment in the superior court. On May 7, 2018, Friend attended a court proceeding on the charge and the prosecutor entered a *nolle prosequi*. The court granted Friend's motion to dismiss the charges and the criminal proceeding against him concluded on that date.

The parties largely dispute the procedures and standard for setting bail in Stamford, and surrounding inquiries. Stamford's written policy provides that desk sergeants set bail for arrestees. Friend states that "by practice, Stamford has extended that designation to any employee with a job title of sergeant or above, including police officers working as sergeants in an acting capacity." Stamford denies this fact and states that "[t]he ultimate duty to set bail is with [d]esk [s]ergeants, but they may defer to others in certain situations." Stamford admits that supervisors may set bail, but states that such action is subject to review by the desk sergeant.

According to Friend, "Stamford does not require its employees to interview arrestees when setting bail" and individuals who set bail "are not required to inquire whether arrestees can afford bail." Friend also states that

"[s]upervisors who set bail do not consistently review an arrestee's criminal history . . . ." Stamford, for its part, states that the deposition testimony Friend cites in support of his statement that interviews are not required, does not support that alleged fact. It states that "[t]he SPD processing officer(s) ask an individual arrested by Stamford police the questions set out in the Prisoner Processing Questionnaire. The questions include, among other things, where the individual lives, what his/her educational level is, whether he/she is married, and if he/she is employed, the name of his/her employer." Stamford also denies that Friend has proper support for the contention that supervisors setting bail to do not regularly inquire about an arrestee's criminal history.

Once bail is set, Stamford police officer(s) notify an arrestee of the bail decision and "are not required to document the reasoning behind their . . . decision." The parties dispute whether desk supervisors are required to and/or regularly review bail amounts set in the department. Lieutenants are not required to review bail decisions and Stamford does not evaluate employee bail-setting performance.

The parties also dispute the extent of training officers receive with respect to setting bail. Friend asserts that Stamford does not require officers to be trained on setting bail and that they receive "no formal training about how to set bail

conditions." Friend states that officers "are not taught how to set bail during their initial training at the police academy; they are simply notified that they have statutory authority to set bail." According to Friend, "Stamford relies on employees to orally tell one another how to set a bond amount" and desk sergeants are only guided by a sentence noting that they should "set [] reasonable bonds to ensure the prisoner's appearance in court." He states that Stamford does not provide written guidance about setting bonds "other than Procedure 120 and a copy of a state statute."

Stamford states that "[t]raining of SPD officers regarding the setting of bail starts with basic training for new recruits at the Police Academy where they learn about the [l]aws of [a]rrest and the processing of arrestees, and continues during the new recruits' twelve (12) week mandatory field training. During field training, the recruits spend time in the jail where arrestees are processed and bail is set." Stamford states that "new recruits are provided with written materials during basic training at POSTC."[4] "After successfully completing basic training and SPD field training, SPD recruits become Connecticut certified police officers. Once a new recruit becomes a CT certified police officer, they continue to learn on the job

---

[4] "POSTC" stands for the Police Officer Standards and Training Council.

about how bail is set." Stamford Police Department Policy 120

"provides, in relevant part: '[t]he Desk supervisor shall: . . .

be responsible for setting reasonable bonds to assure the

prisoner's appearance in court, as well as ensuring the court

set bonds are properly posted." Stamford does not train police

on an arrestee's propensity to appear in court and does not keep

track of whether individuals who posted bail subsequently

appear.

Friend submits statistics regarding arrestees arrested at

the time of his arrest and their bonds and listed offenses.

Stamford objects to these facts as hearsay and because they are

incomplete, not properly authenticated and irrelevant.

Stamford submits that prior to Friend's arrest, no

complaints or lawsuits were filed against it or its officers

regarding the setting of bail or bail setting procedures.

Friend does not dispute this fact, but states that it is not

"material to the City's failure to train its employees."

## STANDARD

"The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a).

Summary judgment is appropriate if, after discovery, the

nonmoving party "has failed to make a sufficient showing on an

essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view all inferences and ambiguities "in a light most favorable to the nonmoving party." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991). The moving party has the burden "to demonstrate the absence of any material factual issue genuinely in dispute." Heyman v. Commerce and Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975).

"A dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "'Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper.'" Id. at 523 (quoting Bryant, 923 F.2d at 982). The nonmoving party cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" Robinson v. Concentra Health Servs., 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted).

**DISCUSSION**

## I. First Amendment – Counts 1 & 2

In counts one and two, Friend alleges that Gasparino violated his First Amendment rights to freedom of speech when he confiscated Friend's "Cops Ahead" sign, asked him to leave the area and not return with another sign and arrested Friend upon such return.

Friend argues that he engaged in the republication of public and truthful information and his act of holding two signs in two locations constituted protected speech. He avers that Gasparino's "speech silencing measures are content-based restrictions on expression" "are presumptively invalid" and "must meet strict scrutiny." Specifically, Friend argues that he may not be punished for his dissemination of public information on a matter of public concern, absent furtherance of "a state interest of the highest order" and a narrowly tailored punishment. He notes that police officer performance of their duties represents a public concern and argues that the government interests of "not having to address Friend's protest" and/or "not observing as many violations" are not sufficiently compelling. He states that Gasparino's punishment was not "narrowly tailored" as it prevented Gasparino from republishing lawfully obtained public information. Friend points out that his speech "was more closely tailored to reducing distracted

12

driving than was Gasparino's speech-silencing." He states that "no court has ever held that punishment for speech repeating information already available to the public was narrowly tailored."

Gasparino argues in opposition, and in his own motion for summary judgment, that Friend "was not arrested for expressing any opinion or message related to a matter of public significance." He states that his act of seizing the sign and warning Friend not to return with another sign was "narrowly tailored" action with the aim of accomplishing the important government interest of continuing a traffic safety operation and ultimately saving lives. Gasparino notes that "[a]t the heart of this case is whether [Friend's] attempt to hinder this initiative trumped the law enforcement effort to improve highway safety without interruption." With respect to Friend's argument that his speech was "content-based," Gasparino points out that his "Cops Ahead" sign did not discuss a topic or idea or express an opinion. It was, according to Gasparino, "of little, if any, public concern." Gasparino states that not permitting Friend to display his sign in the area he sought to display it did not "chill" any speech protected by the First Amendment and any effect on Friend's speech was "de minimus."

In his reply and his opposition to Gasparino's motion, Friend argues that his content-based speech warrants strict

scrutiny.  Specifically, he states that his "expressive conduct" was "intended to convey a particularized message."  He states that his "message was plainly understood by those who viewed it, including Gasparino, who objected to the message conveyed."  He states that Gasparino's act not permitting Friend to stand near the traffic operation fails to pass strict scrutiny because his speech actually "reduc[ed] the law breaking itself" which "is more important than letting it carry on so as to generate ticket-writing opportunities."  Friend states that although he was free to display his sign elsewhere, any such display would not carry the message Friend was trying to relay; a warning about that particular police enforcement operation.  He also notes that his is a direct First Amendment violation, not one for retaliatory behavior and, therefore, he need not prove that Gasparino acted with a "purpose."

"The First Amendment protects against government regulation and suppression of speech on account of its content.  Content-based speech restrictions are subject to 'strict scrutiny'—that is, the government must show that the regulation at issue is narrowly tailored to serve or promote a compelling government interest."  U.S. v. Caronia, 703 F.3d 149 (2d Cir. 2012) (internal citations omitted).  "In order to narrowly tailor a law to address a problem, the 'government must curtail speech only to the degree necessary to meet the particular problem at

hand,' and the government 'must avoid infringing on speech that does not pose the danger that has prompted regulation.'" Green Party of Connecticut v. Garfield, 616 F.3d 189, 209 (2d Cir. 2010) (quoting Fed. Election Comm'n v. Mass. Citizens for Life, Inc., 479 U.S. 238, 265 (1986)).  "The government must prove that there is no 'less restrictive alternative' to the law in question, for '[i]f a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative.'" Id. (quoting United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813 (2000)).

In this case, it is questionable whether Friend's act of holding a "Cops Ahead" sign a few blocks from a location in which officers were stopping distracted drivers, rises to the level of expression of an opinion related to a matter of public significance.  Although Friend states that he "objected to the way [police] were issuing tickets," no where does Friend state how such issuance was unlawful or improper.  While he makes reference to the procedure by which Gasparino stood "behind a column" and "radio[ed] ahead to his colleagues whenever he alleged a driver to have been using a cell phone," he never discusses how this procedure was unfair to individuals driving by or was a deviation from normal police procedure.  His signs did not discuss a topic or express his opinion on it.  The court

agrees with Gasparino that Friend's speech was "of little, if any, public concern."

Even assuming that his speech was protected, however, and was content-based, the court concludes that Gasparino's actions pass strict scrutiny. Although Friend identifies the government interest at stake as one of "generat[ing] ticket-writing opportunities," instead, the police department's interest was in saving lives by stopping distracted drivers and issuing citations for their behavior. More than simply writing tickets, the police operation sought to stop and cite violators in order to deter not only current behavior, but also future distracted driving and, therefore, save lives. The court concludes that this was a sufficiently "compelling interest." In light of this purpose, and Friend's stated purpose to warn such violators before they were detected by police, the only way in which Gasparino could tailor punishment was to remove Friend and his signs from the adjacent area. The operation could only effectively continue without Friend's interference. The court acknowledges that his removal defeated the purpose of what Friend was trying to accomplish, however there was "no 'less restrictive alternative,'" <u>Fed. Election Comm'n v. Mass. Citizens for Life, Inc.</u>, 479 U.S. 238, 265 (1986), given Friend's goal and the purpose of the police operation. Had

Friend wished to complain about particular police procedures or in general about the police, he was free to do so elsewhere.

Friend's cites <u>Bartnicki v. Vopper</u>, 532 U.S. 514 (2001), for the Court's observation that "it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party." <u>Id.</u> at 529-30. In that case, however, the referenced "non-law-abiding third party" broke the law by providing the information at issue. Here, the information obtained regarding the police presence in the area, was not the basis for the unlawful conduct at issue. Such unlawful conduct in this case was a violation of Connecticut distracted driving laws. The <u>Bartnicki</u> Court also noted that "there are some rare occasions in which a law suppressing one party's speech may be justified by an interest in deterring criminal conduct by another, see, e.g., <u>New York v. Ferber</u>, 458 U.S. 747 (1982) . . . ." <u>Id.</u> at 530.

Gasparino's motion for summary judgment with respect to Friend's claim for a violation of his First amendment rights is granted and Friend's motion on that issue is denied.

## II. <u>Malicious Prosecution – Count 3</u>

Friend argues that he is entitled to judgment on his malicious prosecution claim brought pursuant to the section 1983 and the Fourth Amendment, because he was unlawfully charged with

17

Connecticut's "interference statute," Conn. Gen. Stat § 53a-167a. Specifically, Friend argues that the courts have narrowly applied the statute to conduct involving "fighting words," in order to avoid constitutional infirmity.[5] He states that his conduct in this case fails to amount to a violation of the statute and, therefore, Gasparino did not have probable cause to arrest him. As a result, Friend states that he is entitled to judgment on his malicious prosecution claim.

Gasparino argues that the line of cases Friend cites in support of his argument all involved only verbal conduct and in this case, Friend was arrested for his physical conduct. Specifically, Gasparino argues that Friend "was arrested for his physical conduct which was intended to and actually or potentially could have hindered the officers in the course of their duties." In this case, Gasparino states that he warned Friend not to return with another sign or he would be arrested for interference. When Friend did exactly that, Gasparino arrested him. Gasparino notes that "Friend's intentional physical conduct . . . was within the conduct proscribed by the statute as defined in Williams"[6] and "can be inferred from his words and actions."

---

[5] He cites <u>State of Connecticut v. Williams</u>, 205 Conn. 456 (1987) for this proposition.

[6] <u>State of Connecticut v. Williams</u>, 205 Conn. 456 (1987).

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). In order to prove a claim for malicious prosecution in Connecticut, the plaintiff must prove that: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." Brooks v. Sweeney, 299 Conn. 196, 210-211 (2010) (quoting Bhatia v. Debek, 287 Conn. 397, 404-05 (2008)). "A claim for malicious prosecution under section 1983 requires the additional element of '(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" Perez v. Duran, 962 F. Supp. 2d 533, 540 (S.D.N.Y. 2013) (quoting Rohman v. N.Y.C. Transit Auth. (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000)).

With respect to its determination of the existence of probable cause, the "court must look at the totality of the circumstances." Marchand v. Simonson, 16 F. Supp. 3d 97,

19

110 (D. Conn. 2014) (quotation marks and citation omitted). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). Similarly, "under Connecticut law, probable cause comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." Weinstock v. Wilk, 296 F. Supp. 2d 241, 246 (D. Conn. 2003), adhered to on reconsideration, No. 3:02CV1326(PCD), 2004 WL 367618 (D. Conn. Feb. 25, 2004). "'In determining whether the necessary quantum of evidence existed to support a finding of probable cause, . . . the [c]ourt must consider those facts available to the officer at the time of the arrest.'" Goff v. Chivers, 2017 WL 2174404 (D. Conn. May 17, 2017) (quoting Reese v. Garcia, 115 F. Supp. 2d 284, 290 (D. Conn. 2000)). "[I]f probable cause existed for the arrest, the plaintiff[] cannot satisfy the elements of . . . a malicious prosecution claim under § 1983." Shattuck, 233 F. Supp.2d 301, 307 (D. Conn. 2002).

‼ With respect to the probable cause element, the court must address whether there was sufficient probable cause to arrest

Friend for a violation of Conn. Gen. Stat. § 53a-167a.[7]  In _State of Connecticut v. Williams_, 205 Conn. 456 (1987), the Connecticut supreme court addressed the constitutionality of section 53a-167a.  The court "interpret[ed] § 53a-167a to cover some acts of verbal resistance as well as acts of physical resistance."  The court noted that "[a]lthough the statute does not explicitly define the nature of the acts that fall within its ambit, 'resistance,' as commonly understood, encompasses both verbal and physical conduct."  _Id._ at 471.[8]  "To avoid the risk of constitutional infirmity," the court construed "§ 53a-167a to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace."  _Id._ at 473 (internal quotations and quotation marks omitted).  The court recognized that "the statute confines its scope to conduct that amounts to meddling in or hampering the activities of the police in the performance of their duties."  _Id._ at 471.

In _Goff v. Chivers_, 2017 WL 2174404 (D. Conn. May 17, 2017), this court recognized that "[a] third manner of violation of the statute has emerged in the case law since _Williams_ was

---

[7] Section 53a-167a provides that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer, special policeman appointed under section 29-18b or firefighter in the performance of such peace officer's, special policeman's or firefighter's duties."

[8] The court also recognized the intent element of the statute.  _Id._ at 472.

decided; that is, failure to comply with a direct order of a police officer under certain circumstances." Id. at *8 (citing Acevedo v. Sklarz, 553 F. Supp. 2d 164, 168 (D. Conn. 2008) (recognizing that "it is that refusal" to comply with an officer's request "that hinders or impedes the course of the investigation of the defendant or the performance of the officer's duties." (citation omitted)); see also Torlai v. LaChance, 2015 WL 9047785, *8 (D. Conn Dec. 15, 2015).

The court concludes that based on the undisputed facts, Gasparino had probable cause to arrest Friend for interference, in violation of Conn. Gen. Stat. § 53a-167a. Gasparino warned him not to return with another sign or he would be arrested for interfering with the distracted driving operation. That is precisely what Friend did. He was not arrested for verbal conduct, but rather for his physical conduct in returning to the scene, in direct contravention of Gasparino's instructions. There can be no doubt that his conduct was intentional. This conduct "amount[ed] to meddling in or hampering the activities of the police in the performance of their duties." Id. at 471. Specifically, Friend was preventing the police from conducting effective enforcement of distracted driving violations by warning drivers of the presence of police officers in the vicinity. Based on the existence of probable cause to arrest, Friend cannot prove his malicious prosecution claim against

Gasparino.  Therefore, Friend's motion for summary judgment is denied and Gasparino's motion is granted on this issue.

### III. **Due Process and Equal Protection – Counts 4 & 5**

Friend next asserts claims against the city of Stamford in count four (violation of his right to procedural due process) and count five (substantive due process and equal protection). He argues that Stamford is liable for a violation of his constitutional rights based on its unlawful procedure for setting bail.  Specifically, Friend points out that because Stamford designates police supervisors with the power to set bail, such supervisors are "policy-makers" for purposes of the Monell analysis.  Friend states that the city "maintains unconstitutional practices" with respect to setting bail and failed to properly train its employees "on how to constitutionally set bail."  He argues that Stamford's "longstanding custom of unconstrained bail-setting . . . ," includes a failure to interview arrestees or review documentation and a failure to train or provide sufficient guidance to employees regarding setting a proper amount of bail.

Stamford argues in opposition, and in support of its own motion and reply, that there is "no evidence of an aberrant 'custom' which led to the alleged constitutional violation." Stamford clarifies that the desk sergeants are responsible for setting bail, although they may defer to a sergeant or other

officer.  It states that "Gasparino did not have policymaking authority" for purposes of the Monell analysis.  Stamford avers that the city does train its employees regarding bail during its basic training of new recruits and through on-the-job training, and has a policy for setting bail that includes interviewing arrestees.  It states that in order to prove his claim based on a failure to train, Friend must show a "pattern" of similar constitutional violations, but he only points to a single incident, that is, the alleged violation of Friend's rights in this case.  According to Stamford, this case does not fit into the "narrow" line of authority recognizing a single incident sufficient to support deliberate indifference.  It states that Friend also fails to prove causation because if Gasparino, using his discretion, did not follow Stamford's policy, his actions are not attributable to the city.[9]

Friend replies that Stamford's statements are "incorrect" or a "mischaracterization of the evidence."  Specifically, Friend argues that a single act may establish a municipal policy including a single act of a failure to train where "unconstitutional consequences" of such failure are "patently obvious."  He cites Walker, 974 F.2d 293, 297-98 (2d Cir. 1992), for the proposition that repeated complaints are not necessary.

---

[9] Stamford also notes that any delay Friend experienced in being detained was the result of a delay in the bail commissioner's review.

24

According to Friend, there is sufficient evidence of a failure to train here and the act of setting bail is routine and is an activity that proper training would make less difficult. Friend states that Stamford fails to point to "written policies or procedures aside from one sentence in Procedure 120." He states that Stamford provides no information with respect to what constitutes "reasonable bail," any training takes place at the beginning of an officer's career, officers only receive limited field training, and it is not clear whether the issue of setting bail is addressed on the sergeant's exam. In essence, according to Friend, officers setting bail are "left to their own devices in determining reasonable bail . . . ," regardless of whether the training is labeled formal or informal. He points out that booking officers are not required to share information with the officer setting bail, there is no record of the basis for the amount set and there is no consistent review of the bail decision. Friend states that Stamford's "non-policy *is* municipal custom, and it alone subjects the City to liability" and makes Gasparino a "policymaker."

The Supreme Court has recognized that municipalities may be held liable under section 1983 "to be sued as 'persons' within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007)

(quoting <u>Monell v. Dep't of Social Servs. of the City of N.Y.</u>, 436 U.S. 658, 691, 694 (1978)).  With respect to a claim that a municipality has failed to act, "<u>Monell's</u> policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions. . . . Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, may constitute a policy or custom within the meaning of <u>Monell</u>."  <u>Id.</u> at 192 (citing <u>Monell</u> at 690-91).  "It follows, therefore, that a government supervisor who fails to take obvious steps to prevent manifest misconduct is subject to suit under § 1983 in certain, limited circumstances."  <u>Id.</u>  The second circuit has recognized that in order to satisfy the policy or custom requirement, a plaintiff must "(1) establish state defendants' duty to act by proving they should have known their inadequate supervision was so likely to result in the alleged deprivations so as [sic] constitute deliberate indifference under <u>*Walker*</u>;[10] (2) identify obvious and severe deficiencies in the state defendants' supervision that reflect a purposeful rather than negligent course of action; and (3) show a causal relationship between the

---

[10] <u>Walker v. City of New York</u>, 974 F.2d 293 (2d Cir. 1992).

failure to supervise and the alleged deprivations to plaintiffs." _Id._ at 193 (2d Cir. 2007).

"Courts have recognized four ways for plaintiffs to demonstrate a 'policy or custom': (1) 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,' _Monell v. Dep't of Soc. Servs. of City of New York_, 436 U.S. 658, 690, (1978); (2) conduct ordered by a municipal official with policymaking authority, _Pembaur v. City of Cincinnati_, 475 U.S. 469, 483–84 (1986);[11] (3) actions taken 'pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels,' _Monell_, 436 U.S. at 690–691; . . . or (4) a 'failure to train' municipal employees that 'amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact,' _City of Canton, Ohio v. Harris_, 489 U.S. 378, 388, (1989)."[12] _Walker v._

---

[11] A "[p]laintiff could satisfy _Monell_'s 'policy, custom, or practice' requirement by demonstrating 'actions taken or decisions made by government officials responsible for establishing municipal policies....'" _Baity v. Kralik_, 51 F. Supp. 3d 414, 436 (S.D.N.Y. 2014) (quoting _Albert v. City of Hartford_, 529 F. Supp. 2d 311, 329 (D. Conn. 2007) (citing _Pembaur_, 475 U.S. at 483–84); _see_ _also_ _Chin v. N.Y.C. Hous. Auth._, 575 F. Supp. 2d 554, 561 (S.D.N.Y. 2008) ("[T]he acts and pronouncements of a single official may constitute policy for which the municipality is liable if that official is the 'final policymaker' in the area at issue." (citing _St. Louis v. Praprotnik_, 485 U.S. 112, 123 (1988) (plurality opinion), and _Jeffes v. Barnes_, 208 F.3d 49, 57 (2d Cir.2000))).

[12] "The plaintiff must establish that the officials consciously disregarded a risk of future violations of clearly-established constitutional rights by badly-trained employees." _Jane Doe II v. City of Hartford_, 2005 WL 2009051, *5 (D. Conn. August 22, 2005).

City of New York, 2014 WL 1259618 *2 (S.D.N.Y. March 18, 2014). "Monell liability attaches only where an infringement of constitutional rights is caused by a local government policy. Bellamy v. City of New York, 914 F.3d 727, 757 (2d Cir. 2019) (citing Outlaw v. Hartford, 884 F.3d 351, 372-73 (2d Cir. 2018)).

At the outset, the court notes that Friend has failed to state facts establishing that Gasparino was a policymaker. Friend's argues that Gasparino qualifies as a policymaker because Stamford has no policy on the issue of setting bail and Gasparino is authorized to make decisions with respect to bail. He cites no law on point to support the proposition that Gasparino, a police sergeant, was a "policymaker" with regard to the issue of setting bail in the city of Stamford. Garsparino is not an individual with "substantial authority" regarding bail setting procedures.

To support his statement that Stamford "maintains unconstitutional practices" with respect to setting bail, Friend cites a lack of consistent procedures and training and guidance for those officers making decisions on bail. He does not cite complaints, other than his own, that such unlawful practices resulted in constitutional violations. Stamford, for its part, references the testimony of four officers with respect to factors they typically consider in setting bail. Stamford also

references the obligation to set "reasonable bail" in Procedure
120[13] and notes the requirements of basic and field training of
police recruits regarding processing arrestees and setting bail.
Officers thereafter learn about setting bail "on the job."[14]
While there are only minimal written guidelines for setting
bail, Stamford has provided evidence that officers are trained
on the issue.  Although Friend disagrees with the amount or
extent of such training, he has failed to provide sufficient
evidence that "the need to act [was] so obvious, and the
inadequacy of current practices so likely to result in a
deprivation of federal rights, that the municipality or official
can be found deliberately indifferent to the need."  City of
Canton v. Harris, 489 U.S. 378, 390 (1989).  He has not
identified "obvious and severe deficiencies" in Stamford's
training that evidence "purposeful, rather than "negligent"
action.

    With respect to a lack of consistently applied procedures
regarding bail, Friend's evidence is also lacking.  Although he

---

[13] Stamford Police Department Policy 120 "provides, in relevant part: '[t]he
Desk supervisor shall: . . . be responsible for setting reasonable bonds to
assure the prisoner's appearance in court, as well as ensuring the court set
bonds are properly posted."

[14] Friend's response to this statement denies this fact and his denial simply
references pages 7-12 of his brief. This reference fails to cite to
"particular parts of materials in the record" or show "that the materials
cited" fail to support this fact.  In short, he has failed to cite specific
evidence creating an issue regarding this fact. In fact, several of the
referenced pages of his brief are not at all relevant to this alleged fact.

cites evidence that he was not questioned about his ability to
pay and that the booking officer did not review Gasparino's
decision, he does not submit sufficient evidence of a policy or
custom that resulted in constitutional violations.  He also
fails to refute causation such that even if his rights were
violated, any such a violation was a result of Gasparino's
failure to follow applicable policies and are not attributable
to any citywide "policy" or "custom."  There is simply
insufficient evidence that in setting bail at $25,000, and
holding Friend for several hours, the city of Stamford violated
Friend's constitutional rights "pursuant to a governmental
policy or custom" that was "sufficiently persistent or
widespread as to acquire the force of law." <u>Reynolds v.
Giuliani</u>, 506 F.3d 183, 190, 192 (2d Cir. 2007).

**CONCLUSION**

For the foregoing reasons, the plaintiff's motion for
summary judgment (document 58) is denied and the defendants'
motions (documents 59 & 61) are granted.  The clerk is directed
to render judgment and close this case.

It is so ordered this 29th day of September 2020, at
Hartford, Connecticut.

/s/
_____
Alfred V. Covello
United States District Judge
