### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MICHAEL FRIEND, | ) | |
|     *Plaintiff*, | ) | |
|  | ) | Case No. 3:18-cv-1736-OAW |
| v. | ) | |
|  | ) | |
| RICHARD MR. GASPARINO, CITY OF | ) | |
| STAMFORD | ) | |
|     *Defendants*. | ) | |
|  | ) | |

### RULING PURSUANT TO AN ORDER FROM THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**THIS ACTION** is before the court upon the Mandate from the United States Court of Appeals for the Second Circuit. ECF No. 89 ("Second Circuit Ruling"). The court has reviewed Plaintiff's motion for summary judgment, ECF No. 58 ("Pl.s' MSJ"), Defendant Richard Gasparino's motion for summary judgment, ECF No. 59 ("Def.'s MSJ"), Defendant City of Stamford's motion for summary judgment, ECF No. 61 ("Stamford's MSJ"), as well as each parties' responses and replies thereto. For the reasons discussed herein, Plaintiff's summary judgment motion is **GRANTED** as to Counts One and Two, but Plaintiff's and Defendant's motions are **DENIED** as to Count Three.

### I.      FACTUAL BACKGROUND

As this case is before the court on remand from the United States Court of Appeals for the Second Circuit, the court presumes familiarity with its facts, but provides the following truncated summary thereof, as is relevant to this ruling.

At around 4:00 pm on April 12, 2018, near the intersection of Hope Street and Greenway Street in Stamford, Connecticut, Plaintiff Michael Friend noticed a number of

local police officers issuing traffic infractions to drivers for allegedly using their cellphones while driving.  Opp'n to Richard Gasparino's Mot. for Summ. J. 17, ECF No. 68 ("Pl.'s Opp'n").   Plaintiff observed Defendant Richard Gasparino ("Defendant")[1], a police sergeant, standing "behind a pole" on the side of Hope Street, watching northbound traffic and radioing other officers whenever he allegedly observed a driver using their cellphone. Am. Compl. ¶ 8, ECF No. 34.  Plaintiff "thought that the way [Defendant and his fellow officers] were issuing tickets was underhanded."  *Id.* ¶ 9.  In response, Plaintiff created a sign with marker and paper which read "Cops Ahead."  *Id.* ¶ 10.  Plaintiff displayed the sign at the intersection of Hope Street and Cushing Street, which is two blocks south of where Plaintiff had observed Defendant.  *See id.* ¶¶ 10–12; Map, Ex. 5, ECF No. 58-5.

"Shortly thereafter," Defendant approached Plaintiff and confiscated the sign.  Am. Compl. ¶ 13, ECF No. 34.  While doing so, Defendant ordered Plaintiff to "not come back with a sign," and that Plaintiff would be arrested if he did not follow orders.  Dep. of Richard Gasparino, Ex. G, at 33:7–24, ECF No. 59-9; *see* Am. Compl. ¶ 14.  Plaintiff then walked away from the place that his sign was taken and returned to his car to grab material to create another sign.  *See* Am. Compl. ¶ 15.  Because he couldn't find a pen or a marker in his car, Plaintiff walked into the nearby grocery store, Food Bag, to borrow something with which to write.  *See id.* ¶¶ 15–16; Dep. of Michael Friend, Ex. 1, at 41:10–24, ECF No. 58-1.  Plaintiff created another sign which also read "Cops Ahead."  Am. Compl. ¶ 16, ECF No. 34.  He proceeded to display the sign in front of Food Bag, located at the intersection of Hope Street and Fahey Street, which is three blocks south of where Plaintiff

---

[1] Although the underlying complaint was filed against two named Defendants—Richard Gasparino and the City of Stamford—the claims on remand are against Sgt. Gasparino.  Therefore, the court refers to Sgt. Gasparino as "Defendant" in this ruling.

had originally spotted Defendant.  *See id.* ¶¶ 16–18.  Some time thereafter, a Food Bag employee handed Plaintiff a lager "Cops Ahead" sign which was made out of cardboard. *Id.* ¶ 19.

"About a half-hour later," Defendant approached Plaintiff, who was still displaying his sign in front of Food Bag.  *Id.* ¶ 20.  Defendant then arrested Plaintiff for "interfering with a police officer."   Dep. of Richard Gasparino, Ex. 4, at 52:6–12, ECF No. 58-4. Plaintiff was handcuffed and had his two cellphones confiscated.  *See* Am. Compl. ¶¶ 21– 22.  He was then taken to the police station by Officer Deems.  Although no police officer explained how Plaintiff was interfering, Officer Deems mentioned that Plaintiff was "messing with their livelihood."  Dep. of Michael Friend, Ex. 1, at 96:5–10, ECF No. 58-1. Plaintiff was charged with interfering with an officer (a misdemeanor), pursuant to Section 53a-167a(a) of the General Statutes of Connecticut.  *See* Am. Compl. ¶ 28, ECF No. 34.

After completing his bail interviews, Plaintiff was released from custody around 2:00 am on April 13, 2017, with a written promise to appear.  *See id.* ¶¶ 36, 37, 41; *see also* Dep. of Nick Montagnesi, Ex. 14, at 46:2–5, ECF No. 58-14 (explaining that a "promise to appear is a decision to release somebody without a financial obligation").  As a result of this charge, Plaintiff had to appear before the Superior Court of Connecticut on two occasions.  *See* Am. Compl. ¶ 45, ECF No. 34.  He was arraigned on April 26, 2018. *See* Court Records, Ex. H, ECF No. 59-10.  Upon his second appearance, however, an attorney for the State of Connecticut moved to enter a nolle prosequi, upon which the case was dismissed.  *See id.*

Plaintiff sued Sgt. Gasparino and the City of Stamford, raising five different claims under the First, Fourth, and Fourteenth Amendments.  *See* Am. Compl. ¶¶ 50–54. Woven

into his constitutional claims are additional allegations of injury.  For example, Plaintiff alleges that his ability to work was affected because the police had confiscated his cellphones, which he needed for his food delivery jobs.  *See* Am. Compl. ¶¶ 42, 43.  He also notes that he had to retain a criminal defense lawyer to represent him before the Superior Court of Connecticut.  *See* Am. Compl. ¶ 44.

## II.   **PROCEDURAL BACKGROUND**

The underlying complaint for this case was first filed on October 22, 2018, and the case was first assigned to the Honorable Alfred V. Covello.  *See* Compl., ECF No. 1.

On August 13, 2019, Plaintiff filed an amended complaint docketed at ECF No. 34, pursuant to the court's order granting his motion for leave to amend, *see* Order, ECF No. 33.  The amended complaint remains the operative complaint.

After engaging in discovery, the parties filed motions for summary judgment. Plaintiff, on February 14, 2020, *see* ECF No. 58, Sgt. Gasparino on February 18, 2020, *see* ECF No. 59, and the City of Stamford on February 22, 2020, *see* ECF No. 61.

On September 29, 2020, the court issued an omnibus ruling, disposing of all pending summary judgment motions.  *See* Ruling on the Defs.' Mots. for Summ. J., ECF No. 78.  It granted those from the defendants, while denying Plaintiff's.  *See id.* at 30.

On October 23, 2020, Plaintiff filed his notice of appeal.  *See* ECF No. 81.  While pending review on appeal, the case was transferred to the undersigned on March 1, 2023. *See* Order of Transfer, ECF No. 85.

On appeal, the United States Court of Appeals for the Second Circuit vacated the order of this court as to Counts One, Two, and Three, while affirming the order as to

Counts Four and Five.  *See* Mandate of the USCA, ECF No. 89 (published at *Friend v. Gasparino*, 61 F.4th 77 (2d Cir. 2023)).  The case was remanded for further proceedings consistent with the Second Circuit's opinion as to Counts One, Two, and Three.  *See id.* Specifically, this court has been instructed to consider Defendant's qualified immunity defense as to Counts One and Two.  *See* Friend, 61 F.4th at 93.  The Second Circuit also instructed the court to reconsider its prior ruling on Plaintiff's malicious prosecution claim and the applicability of qualified immunity against such a claim.  *See id.* at 87.

The court now undertakes such review.

## III.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the moving party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists."  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (citations omitted).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*  The court must disregard all evidence favorable to the moving party that the jury is not required to believe.  *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."  *Id.* (citing Fed. R. Civ. P. 56(e) Advisory Committee Note (1963)).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986)). Instead, the party opposing summary judgment must set forth in their response "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (internal quotation marks omitted).

At summary judgment, the judge's function is "not to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue" of material fact best left for determination by a jury at trial. *Anderson*, 477 U.S. at 249.

## IV.   **DISCUSSION**

### A.  **Counts One and Two**

Plaintiff's first claim alleged that, by seizing his "Cops Ahead" sign, Sgt. Gasparino violated his First Amendment right to free speech. *See* Compl. ¶ 50, ECF No. 34. Plaintiff's second, and related, claim alleges that Defendant violated his First Amendment rights by arresting him for displaying his sign on a public sidewalk. *See id.* ¶ 51.

6

1.   _Reach of the First Amendment_

The United States Court of Appeals for the Second Circuit determined that Plaintiff's speech, as relevant to each count, is protected by the First Amendment.  *See Friend*, 61 F.4th at 91.

First, the Second Circuit determined that Plaintiff's speech did not fall into any of the "historic and traditional categories" of unprotected speech, such as "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct."  *Id.* at 87 (quoting *United States v. Stevens*, 559 U.S. 460, 468–69 (2010)).  It then held that it was irrelevant whether Plaintiff's speech addressed matters of public concern.[2]  *See id.* at 87–88.  This was because Plaintiff's speech amounted to an expression by a private citizen on a public sidewalk.  *See id.* at 88.  While there may be circumstances in which it matters whether the speech in question addressed a matter of public concern, this was not such a case.  *See Friend*, 61 F.4th at 88 (holding that the subject matter of the speech would have been relevant had Plaintiff been, for example, a "public employee alleging retaliation" or "a defamation defendant seeking protection from tort liability").

Next, in addressing Plaintiff's specific conduct in question, the Second Circuit found that the medium and means of Plaintiff's expression did not fall outside the protections of the First Amendment.  *See id.* at 89.  Plaintiff was not required to "make a public policy argument" in support of his message, nor was Plaintiff required to center his expression on objection to government conduct.  *See id.* (citations omitted).

---

[2] Even so, the Second Circuit determined that Plaintiff's speech was indeed a matter of public concern. *Friend v. Gasparino*, 61 F.4th 77, 88 (2d Cir. 2023).  It then further stated that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."  *Id.* (quoting *City of Houston v. Hill*, 482 U.S. 451, 462–63 (1987).

Finally, in addressing Plaintiff's arrest, the Second Circuit concluded that Plaintiff's speech was not "integral to criminal conduct," such that it may be restricted.  *See id.* (citing *Stevens*, 559 U.S. at 468).  Plaintiff was "not acting in coordination with lawbreakers."  *Id.* at 90.  Defendants could not identify a crime that Plaintiff had committed, "let alone a crime to which [Plaintiff's] speech was 'integral.'"  *Id.*  Instead, the Second Circuit declared that Plaintiff "did not violate [Conn. Gen. Stat. § 53a-167a]," because that statute was to "proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of peace."  *Id.* (quoting *State v. Williams*, 205 Conn. 456, 534 (1987)).

### 2.  *Application of the First Amendment*

Having established that Plaintiff's speech is protected by the First Amendment, the Second Circuit ruled that Defendant Gasparino's conduct amounted to content based regulation.  *See id.* at 91.  Observing that this regulation was enforced in a "traditional public for[um]," the Second Circuit declared that Mr. Gasparino's action must "satisfy strict scrutiny."  *Id.* (quoting *Zalaski v. City of Bridgeport Police Dep't*, 613 F. 3d 336, 341 (2d Cir. 2010)).  Under a strict scrutiny analysis, the court must determine whether the government's restriction on speech is "narrowly tailored" to serve a "compelling government interest."  *Zalaski*, 613 F.3d at 341.  Government regulations are narrowly tailored if they are "necessary to serve the asserted compelling interest."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  Put another way, in order to be narrowly tailored, the restriction on speech must be "precisely tailored to serve the [asserted government interest]" and be "the least restrictive means readily available for that purpose."  *Friend*, 61 F.4th at 91 (quoting *Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005)).

8

Consistent with this framework of analysis, the Second Circuit determined that by confiscating Plaintiff's sign and, consequently, arresting Plaintiff, Mr. Gasparino had violated Plaintiff's First Amendment rights.

Parsing through Mr. Gasparino's argument, the Second Circuit clarified that the state interest "is properly defined as the state's interest in saving lives or perhaps in the enforcement of distracted driving laws." *Friend*, 61 F.4th at 92. In arriving at this conclusion, the Second Circuit was careful to distinguish between the state's interest and the effect of the restriction which would allegedly further that interest. *See id.* at 91 (quoting *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991)).

Moving to the narrow tailoring requirement, the Second Circuit ruled that Mr. Gasparino could not "establish that his discretionary restriction of Friend's speech was necessary to serve Connecticut's interest." *Id.* (citing *Hobbs*, 397 F.3d at 149).

### 3.  *Qualified Immunity*

The court must determine whether Gasparino was entitled to qualified immunity protection in 1) confiscating Plaintiff's sign and 2) arresting him. The court finds that qualified immunity does not shield Defendant from damages liability for either such action.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). A government official's conduct violates clearly established law when "at the time of the challenged conduct, the contours of a right are sufficiently clear," such that "every 'reasonable official would have understood that what [they are] doing violates that right."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  There need not be a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* (citations omitted).  This standard of review "protects the balance between vindication of constitutional rights and the government officials' effective performance of their duties." *Reichle*, 566 U.S. at 664 (citing *Anderson*, 483 U.S. at 639).

Two questions guide this analysis: first, "do the facts show that the officer's conduct violated [Plaintiff's] constitutional right?" second, "was the right clearly established at the time of the defendant's actions?"  *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013) (citing *al-Kidd*, 563 U.S. 735).  As to both sets of conduct challenged in this case, the United States Court of Appeals for the Second Circuit answered the first question in the affirmative, leaving only the second question for this court to address.  *See Friend*, 61 F.4th at 93.

The Second Circuit found Plaintiff's conduct to be a protest against police activity, *Friend*, 61 F.4th at 89; *see* Am. Compl. ¶¶ 9–10 (alleging that Plaintiff's conduct was motivated by what he alleged was "underhanded" police behavior), and so this court must assess whether Plaintiff's protest involved a clearly established right within this context.

"In the protest context, the Supreme Court has already well articulated the contours of the right and made clear that the police may not interfere with demonstrations unless there is a 'clear and present danger' of riot, imminent violence, interference with traffic, or other immediate threat to public safety."  *Jones v. Parmley*, 465 F.3d 46, 57 (2d Cir. 2006) (Sotomayor, J.) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 308–09 (1940)).  "Neither energetic, even raucous, protesters who annoy or anger audiences, nor demonstrations

that slow traffic or inconvenience pedestrians, justify police stopping or interrupting a public protest."  *Id.* (citing *Cox v. Louisiana*, 379 U.S. 536, 546–47 (1965)); *see Edwards v. South Carolina*, 372 U.S. 229, 232 (1963) (holding that "clear and present danger . . . rises far above public inconvenience, annoyance, or unrest").

However, it is also clearly established that "the First Amendment does not insulate individuals from criminal sanction merely because they are simultaneously engaged in expressive activity."  *Jones*, 465 F.3d at 58 (citing *Cox*, 379 U.S. at 554).

In this case, Sgt. Gasparino claims that he took Plaintiff's sign and arrested him for interfering an officer, pursuant to § 53a-167a of the General Statutes of Connecticut.  *See* Mem. of Law in Supp. of Mot. for Summ. J. 8–14, ECF No. 59-1 (Def.'s MSJ); Dep. of Richard Gasparino, 52:6–8, ECF No. 58-4.

Section 53a-167a states that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders[,] or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties."  In *State v. Williams*, the Supreme Court of Connecticut clarified the scope of this statute, ruling that "[t]o avoid the risk of constitutional infirmity, we construe § 53a-167a to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of peace."  205 Conn. at 473 (internal quotations omitted).

Each of Sgt. Gasparino's acts must be reviewed under the clearly established boundaries of § 53a-167a.

### i.  *Confiscation of Sign*

First, Defendant is not entitled to qualified immunity for confiscating Plaintiff's "Cops Ahead" sign.

Defendant characterizes Plaintiff's actions as "physical conduct" which obstructed the police in the performance of their duties.  Def. Gasparino's Obj. to Pl.'s Mot. for Summ. J. 3, ECF No. 67.   However, decades of precedent make clear that Defendant's enforcement of § 53a-167a must be analyzed as addressing Plaintiff's speech, rather than taking action in response to Plaintiff's physical conduct.

The only "conduct" against which Defendant sought to enforce § 53a-167a was "the fact of communication."  *Cohen v. California*, 403 U.S. 15, 18 (1971).  Aside from Plaintiff's physical display of his "Cops Ahead" sign, there was no "separately identifiable conduct which allegedly was intended by [Plaintiff] to be perceived by others as expressive."  *Id.*   Thus, Plaintiff's conduct, despite its physical component, must be construed as "speech."  *See id.*; *see also Friend*, 61 F.4th at 87 n.3 (finding "unpersuasive" that Plaintiff was arrested for his "physical conduct in returning to the scene").  Regulation of, or enforcement against, speech is analyzed through "its ideas, its subject matter, or its content."  *Young v. Am. Mini Theatres*, Inc. 427 U.S. 50, 64 (1976).

The *Williams* Court was clear that, consistent with the United States Constitution, § 53a-167a proscribes only those words that by their very expression "inflict injury or tend to incite an immediate breach of peace."  205 Conn. at 473; *cf. Cohen*, 403 U.S. at 18 (holding that without showing of an intent to "incite disobedience," the state could not punish the plaintiff for expressing his views on the draft through the language displayed on his clothing).  "Also, because police officers are expected to exercise a higher degree of restraint than the average citizen, the type of 'fighting words' that would violate [§ 53a-167a] is narrower than under other actional circumstances."  *Ruttkamp v. De Los Reyes*,

No. 3:10-cv-392(SRU), 2012 WL 3596064, at *6 (D. Conn. Aug. 20, 2012) (citing *Williams*, 205 Conn. at 474 n.7).

The record makes clear that no objective police officer could have construed Plaintiff's speech as that which inflicts injury or incites an immediate breach of peace. The sign itself only read "Cops Ahead."  This expression is far from that which would be likely to inflict injury or incite an immediate breach of peace.  Plaintiff here made "no threats of physical harm to police or members of the public," nor did he "incite violence or disorder and display[ any] dangerous weapons."  *Jones*, 465 F.3d at 58 (citing *Cox*, 379 U.S. at 546).  In fact, the record does not even suggest that there was a crowd which had gathered around Plaintiff, let alone that any crowd activity became "objectionable."  *Cox*, 379 U.S. at 546.  Speech which "merely questions a police officer's authority or protests his or her action" is "excluded" from the confines of § 53a-167a.  *Williams*, 205 Conn. at 472 (determining that § 53a-167a is not unconstitutionally vague); *see Brooks v. Siegler*, 531 F. Supp. 2d 323, 330 (D. Conn. 2008) (holding that engaging in "allegedly annoying" speech did not clearly constitute police interference).  It is clear from this line of precedent that Defendant's conduct violated Plaintiff's clearly established First Amendment right to engage in protest.  Particularly where it was through the silent display of a sign from Plaintiff's post on a public sidewalk,[3] neither interfering with officers' ability to pull over drivers who were violating the law nor obstructing said officers' view in determining whether drivers were using cellular devices, any orders from Defendant to Plaintiff to cease his speech were unlawful.

---

[3] Of course, Plaintiff's conduct is different than someone holding up a sign that informs the target of a search warrant that police are about to execute such a search upon having been granted such authority. The court's scope of review on remand does not reach such conduct (nor any police response thereto).

It is also a clearly established right that "an individual may not be prosecuted under [§ 53a-167a] for the refusal to obey an unlawful order." *Marsh v. Town of E. Hartford*, No. 3:16-cv-928(SRU), 2017 WL 3038305, at *3 (D. Conn. July 18, 2017) (citing *Lawson v. Hilderbrand*, 88 F. Supp. 3d 84, 99 (D. Conn. 2015)); *see State v. Aloi*, 280 Conn. 824, 841 (2007) (ruling that "a suspect's refusal to comply with a *lawful* police command" may be cause for prosecution under § 53a-167a) (emphasis added)).[4]   By confiscating Plaintiff's sign for his noncompliance with an unlawful order, Defendant was conducting himself in a way that no reasonable, objective officer would under such circumstances.

Defendant cites a line of cases concerning "move on orders."  Defs.' MSJ 5–8; Def. Gasparino's Obj. to Pl.'s Mot. for Summ. J. 2–3, ECF No. 67 ("Def.'s Resp.").  However, this case is easily distinguishable for at least two reasons.  First, in *Colten v. Kentucky*, 407 U.S. 104 (1972), the Supreme Court of the United States had declared that plaintiff-appellants were not engaging in "activity protected by the First Amendment." *Id.* at 109. Second, in *Salmon v. Blesser*, 802 F.3d 249 (2015) the United States Court of Appeals for the Second Circuit had recognized that the "'free to leave' test may not be the best measure of a seizure where a person has no desire to leave the location of a challenged police encounter.'" *Id.* at 253.  Yet, this case clearly concerns police activity against protected speech at a location where the plaintiff had no desire to leave.  Further, confiscating the sign clearly was an act aimed at the speech displayed upon it, as

---

[4] While there is no right to physically resist even an unlawful police order, *see* Conn. Gen. Stat. § 53a-23, there is no claim that Plaintiff did so in the present case.

Defendant has conceded that Plaintiff could have returned to the same spot without it and have avoided arrest. Def.'s MSJ 6–7; *Friend v. Gasparino*, 61 F.4th 77, 82 (2d Cir. 2023).[5]

In sum, Defendant's conduct violated Plaintiff's First Amendment rights which were clearly established at the time of the challenged police conduct. Qualified immunity does not apply to Defendant's confiscation of Plaintiff's sign.

> ii. *Subsequent Arrest*

Defendant also is not entitled to qualified immunity for arresting Plaintiff because he had neither probable cause nor arguable probable cause.

Defendant argues that the "existence of probable cause trumps [P]laintiff's First Amendment claims." Def.'s MSJ 8. In response, the Second Circuit determined that "there was no probable cause to arrest [Plaintiff] because § 53a-167a(a) did not prohibit [Plaintiff's] actions and § 53a-167a(a) was the only basis that has been suggested for believing that [Plaintiff] was committing any crime." *Friend*, 61 F.4th at 85.

Yet, even in the absence of probable cause, an officer may be entitled to qualified immunity where they can establish that there was "arguable probable cause." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (citing *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether probable cause test was met." *Id.* Despite the

---

[5] It is ironic that Plaintiff was arrested for alerting drivers of the upcoming checkpoint, because Connecticut police departments often publicly release the locations of upcoming checkpoints aiming to enforce operating under the influence (OUI) laws. *See, e.g.*, Saul Flores, *DUI Checkpoints, Extra Patrols Planned During Memorial Day Weekend in CT*, Patch (May 23, 2023, 10:56 AM), https://patch.com/connecticut/middletown-ct/memorial-day-2023-dui-checkpoints-connecticut-when-where [https://perma.cc/JVE2-QYF9] (listing checkpoint details released in advance by the Connecticut State Police); Braley Dodson, *Hartford Police Conducting 2nd OUI Checkpoint in March*, News 8 (Mar. 25, 2024, 1:33 PM), https://www.wtnh.com/news/connecticut/hartford/hartford-police-conducting-2nd-oui-checkpoint-in-march/ [https://perma.cc/5KPQ-DUTX] (reporting on the exact street address of a planned OUI checkpoint).

moniker, "arguable probable cause" is not to be understood as "almost" probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Rather, "[t]here should be no doubt that probable cause remains." *Id.* To be precise, while a "mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (citing *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

"The probable cause standard is the same under both Connecticut and federal law." *Marsh*, 2017 WL 3038305, at *2 (citing *Walcyk v. Rio*, 496 F.3d 139, 156 (2d Cir 2007)). To establish probable cause requires a "showing that officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." "In evaluating whether probable cause exists, the court must look at the 'totality of the circumstances.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)). "Moreover, the court must base its assessment on objective facts and not an officer's subjective intent." *Id.* (citing *Zellner*, 494 F.3d at 369). It is under this standard that the court must determine whether it was objectively reasonable for Defendant to believe that probable cause existed, or that officers of reasonable competence could disagree on whether the probable cause test was met.

It is clear from the record that Defendant has not met the arguable probable cause standard. Defendant's only stated basis for arresting Plaintiff is interference with a police officer, pursuant to § 53a-167a. *See* Dep. of Richard Gasparino 33:14–24; *Friend*, 61 F.4th at 85 (finding that "§ 53a-167a(a) was the only basis that has been suggested for

believing that [Plaintiff] was committing any crime").  Taking from § 53a-167a, Defendant claims that it "cannot be disputed" that Plaintiff's actions could "potentially interfere with the discovery and sanctioning of distracted driving."  Mr. Gasparino's MSJ 8.  The court disagrees.

First, a "violation of [§ 53a-167a] requires specific intent to interfere with an officer." *Jackson v. Town of Bloomfield*, No. 3:12-cv-924(MPS), 2015 WL 1245850, at *10 (D. Conn. Mar. 18, 2015); *see Williams*, 205 Conn. at 474 (holding that § 53a-167a "encompasses only interference that is intentional").  However, speech which is "intended to protest [police] actions" is "insufficient to invoke the application of [§ 53a-167a.]"  *Goff v. Chivers*, No. 3:14-cv-722(SALM), 2017 WL 2174404, at *9 (D. Conn. May 17, 2017) (citing *Williams*, 205 Conn. at 472).  The record is clear that Plaintiff's intended objective was to "protest."  Dep. of Michael Friend, 44:11, ECF No. 58-1.

Second, even if Defendant believed that Plaintiff intended to interfere, no officer reasonably could have thought that Plaintiff was interfering with their physical conduct. *See Goff*, 2017 WL 2174404, at *9.  To be sure, "a person could interfere with the performance of an officer's duties merely be refusing to leave an area that the officer was attempting to seal off."  *Marsh*, 2017 WL 3038305, at *3.  However, the officer's authority to order persons to leave a premise is "limited to circumstances in which the bystander is actually present at—or attempting to gain access to—the area the officer was attempting to seal off."  *Id.* (citing *Brooks v. Siegler*, 531 F. Supp. 2d 323, 330 (D. Conn. 2008); *Ruttkamp*, 2012 WL 3596064, at *8 n.18).  The police cannot claim someone was physically interfering by refusing to leave an area where they have "every right to be." *Ruttkamp*, 2012 WL 3596064, at *8 n.18.  Nothing in the record suggests that Defendant,

nor the Stamford police, sought to seal off the area from which Plaintiff decided to protest. It is also true that Plaintiff had every right to be present where he was.  *See United States v. Trace*, 461 U.S. 171, 177 (1983) (holding that "streets, sidewalks, and parks are considered 'public forums'" which are "historically associated with the free exercise of expressive activities").  To add, Plaintiff never "stepped towards" Defendant, let alone the intersection at which Defendant sought to enforce traffic laws.  *Goff*, 2017 WL 2174404, at *9; *Ruttkamp*, 2012 WL 3596064, at *8 n.18 (finding it "meritless" that the police could find probable cause for physical interference where the plaintiff maintained "5-10 feet" of distance from officers).  Plaintiff first held his sign up "two blocks south" of where Defendant and the Stamford police were issuing traffic citations.  Local Rule 56 Statement of Facts ¶ 5, ECF No. 59-2.  After his first sign was confiscated, Plaintiff resumed his protest "three blocks" away from where the police was stationed.  *See id.* ¶ 10.

Third, despite lawfully engaging in protest, Plaintiff never refused to comply with an officer's request.  After confiscating Plaintiff's first sign, Defendant "told [Plaintiff] that if he returned with a sign he would be arrested."  Local Rule 56 Statement of Facts ¶ 7, ECF No. 59-2.  In response, Plaintiff first returned to his original spot without a sign.  *See* Opp'n to Richard Gasparino's Mot. for Summ. J. 17, ECF No. 68 ("Pl.'s Resp.") (alleging that Plaintiff only held up a blank piece of paper); Local Rule 56 Statement of Facts ¶ 8, ECF No. 59-2.  Later, after creating a new sign which also read "Cops Ahead," Plaintiff moved to a different location, one which was three blocks away from where the police was stationed.  Local Rule 56 Statement of Facts ¶ 5, ECF No. 59-2.

For these reasons, the court finds that a reasonable police officer could not determine that Plaintiff had interfered with an officer within the meaning of § 53a-167a.

There is no arguable probable cause, thus Defendant is not entitled to qualified immunity in arresting Plaintiff.

**B. <u>Count Three</u>**

The Second Circuit vacated the court's summary judgment order as to Count Three, having determined that Plaintiff's arrest "was unsupported by probable cause." *Friend*, 61 F.4th at 87. Per the instructions from the Second Circuit, the court must now "consider whether other elements of [Plaintiff's] malicious prosecution claim are met and whether [Defendant] has a defense of qualified immunity." *Id*.

"To state a § 1938 malicious prosecution claim a plaintiff must show a violation of his right under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Cornelio v. Connecticut*, 32 F.4th 160, 178 (2d Cir. 2022).

*1. <u>Fourth Amendment</u>*

As to the first of these elements, the court finds that Plaintiff has established a violation of his right under the Fourth Amendment.

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). "[T]o be actionable under section 1938, there must be an [unreasonable] post-arraignment seizure." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (citing *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir 2003)).

Plaintiff asserts that his claim of malicious prosecution has satisfied the Fourth Amendment prong because he was "obligated to appear in court twice to defend his

19

criminal prosecution."  Pl.'s MSJ 19; Court Records, Ex. H, ECF No. 59-10.  Defendant disagrees, claiming that Plaintiff's release on written promises to appear with no other restrictions or conditions, did not amount to "restraint on his liberty."  Def.'s MSJ 16.

Admittedly, the Second Circuit's precedent is unclear as to what is considered an unreasonable seizure in violation of the Fourth Amendment.  *See Oxman v. Downs*, 999 F. Supp. 2d 404, 413–14 (E.D.N.Y. 2014) (analyzing *Burg v. Gosselin*, 591 F.3d 95 (2d Cir. 2010); *Swartz*, 704 F.3d 105; and *Faruki v. City of New York*, 517 F. App'x. 1 (2d Cir. 2013)); *see also Franco v. Gunsalus*, No. 22-71, 22-339, 2023 WL 3590102, at *4 (2d Cir. May 23, 2023) (declining to "address how *Faruki* and *[Burg]* interact with the rule articulated in *Swartz*").   However, in the *Swartz* opinion, the Second Circuit declared as "dictum" a portion of the holding of *Burg*, which had stated that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  704 F.3d at 112 (quoting *Burg*, 591 F.3d at 98).  Finding the *Swartz* opinion to the most recent, binding opinion, the court adopts it as such.[6]

Under *Swartz*, "a post-arraignment defendant who is 'obligated to appear in court in connection with criminal charges whenever his attendance is required' suffers a Fourth Amendment deprivation of liberty."  *Id.* (citing *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997); *Jocks*, 316 F.3d at 136).  Parties do not dispute that Plaintiff was ordered to appear in court at least twice.  Def.'s MSJ 16.  Plaintiff was arraigned on April 26, 2018.  *See id.*

---

[6] *Faruki v. City of New York*, 517 F. App'x. 1 (2d Cir. 2013), perhaps the opinion most inconsistent with *Swartz*, was issued as a summary order which does not have precedential effect.  Moreover, the portion of the *Faruki* opinion which is seemingly at odds with the *Swartz* opinion relied on opinions from *Burg* and *Murphy v. Lynn*.  *See Faruki*, 517 F. App'x. at *2 (citing *Burg*, 591 F.3d at 95; *Murphy v. Lynn*, 118 F.3d 938, 942, 946 (2d Cir. 1997)).  The proposition from *Burg* upon which *Faruki* relies has been characterized as dictum.  *See Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).  *Swartz* also is a more recent case than *Murphy*.

The case was continued and then ultimately dismissed on May 7, 2018.  *Id.*  Because, following his arraignment, Plaintiff was "required to appear in court . . . before the charge was nolled," Plaintiff "has proven a Fourth Amendment deprivation of liberty."  *Goff*, 2017 WL 2174404, at *13; *see Hammond v. Long*, No. 3:23-cv-318(SVN), 2024 WL 1344695, at *7 (D. Conn. Mar. 29, 2024) (adopting *Swartz* as the controlling precedent); *Torlai v. LaChance*, No. 3:14-cv-185(JCH), 2015 WL 9047785, *6 (D. Conn. Dec. 15, 2015) (same); *but see Harvey v. Greenwich*, No. 3:17-cv-1417(SRU), 2019 WL 1440385, at *9 (D. Conn. Mar. 31, 2019) (applying *Faruki* to find that "two misdemeanor summonses [were] insufficient to establish a post-arraignment liberty restraint").

### 2.  *State Law Violation*

As to the second element, the court finds that both parties have failed to establish that no reasonable jury could find in favor of the opposing party.  For this reason, the court denies motions for summary judgment from both parties.

"The elements of a malicious prosecution claim in Connecticut are: '(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff, (2) the criminal proceedings terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.'"  *Bauer v. City of Hartford*, No. 3:07-cv-1375(PCD), 2010 WL 4429697, at *10 (D. Conn. Oct. 29, 2010) (citing *Bhatia v. Debek*, 287 Conn. 397, 404 (2008).

Elements 1, 2, and 3 quickly can be resolved in Plaintiff's favor.  Defendant initiated a criminal proceeding against Plaintiff for interfering with police officer.  *See Goff*, 2017 WL 2174404, at *13; *see also* Court Record, Ex. H, ECF No. 59-10.   The criminal

proceedings terminated in Plaintiff's favor after the State of Connecticut entered a nolle prosequi on the charge. *See Spak v. Phillips*, 857 F.3d 458, 463–64 (2d Cir. 2017); Tr. State v. Friend, No. S01S-CR18-193772 (Conn. Super. Ct. May 7, 2018), Ex. 17, at 2:20–22, ECF No. 58-17. Defendant acted without probable cause. *See Friend*, 61 F.4th at 85.

As to element 4, "the plaintiff must show that the defendant[] acted with malice, that is primarily for a purpose other than that of bringing the plaintiff to justice." *Mulligan v. Rioux*, 229 Conn. 716, 745 (1994) (citations omitted). "Want of probable cause and malice, combined, are essential." *Id.* (citing *Thompson v. Beacon Valley Robber Co.*, 56 Conn. 493, 496 (1888)). While the lack of probable cause "may" allow the court to infer malice, *Falls Church Grp, Ltd. v. Tyler, Cooper and Alcorn, LLP.*, 281 Conn. 84, 94 (2007), a "lack of probable cause does not *definitely establish* that a defendant acted with malice." *Goff*, 2017 WL 2174404, at *14 (quoting *Torlai*, 2015 WL 9047785, at *9).

In significant part due to the lack of argument on either side, the court finds that there is a genuine question of fact as to whether Defendant acted with malice.

Plaintiff stopped short of raising allegations of malice, prematurely concluding that "Connecticut takes the lack of probable cause as conclusively establishing malice." Pl.'s MSJ 19. To be precise, the Supreme Court of Connecticut has ruled that malice "*may* be inferred" from the absence of probable cause. *Zenik v. O'Brien*, 137 Conn. 592, 597 (1951) (emphasis added). The *Zenik* Court went on to state that although "want of probable cause is negative in character . . . the burden is upon the plaintiff to prove affirmatively, by circumstance or otherwise, that the defendant had no reasonable ground for instating the criminal proceeding." *Id.*; *see Harasz v. Katz*, 239 F. Supp. 3d 461, 477

(D. Conn 2017) (defining malice as acting with "improper purpose; that is, for a purpose other than that of securing the proper adjudication of the claim"); *see also Quinghe Liu v. Tangney*, No. 3:19-cv-894(CSH), 2020 WL 3036017, at * 8 (looking beyond existence of probable cause for "allegations that support malice").   Going further, the Supreme Court of Errors of Connecticut held that an arrest (lacking probable cause) which is "willfully procured for a wrong an unlawful purpose" is malicious.   *Thompson v. Beacon Valley Rubber Co.*, 56 Conn. 493, 557 (1888).   Here, there is no claim that, for example, Defendant was caught on a body-worn camera telling another officer that he was going to arrest Plaintiff simply because he was annoying (rather than because Defendant genuinely believed that Plaintiff was interfering with an officer).   Without any additional allegations to support a claim that Defendant willfully made an arrest which he knew to lack probable cause, Plaintiff has failed to establish malice such that no reasonable jury may find against Defendant.

Defendant's allegations likewise are sparse.   Defendant's argument is limited to the lack of any evidence of "personal animus" to be derived from his interaction with Plaintiff.   *See* Def.'s MSJ 15.   However, this argument does not address the purpose of the arrest.   After all, Plaintiff claims that Defendant failed to explain precisely how he had interfered with police.   *Compare* Def.s' MSJ 15 *with* Dep. of Michael Friend, Ex. 1, at 96:1–4, ECF No. 58-1; *cf. Berg v. Sorbo*, No. 3:12-cv-228(MPS), 2014 WL 1117643, at *5 (D. Conn. (Mar. 19, 2014) (finding that a reasonable jury could find malice where, police dispatch recording of a call suggested that a police officer may have "acted recklessly or intentionally with regard to the truth of the statements in his affidavit" to pursue an arrest).

More persuasively, though, the statement by Officer Deems that Plaintiff had been arrested for "messing with their livelihood" could be viewed as evidence supporting the claim that Defendant may have arrested Plaintiff for reasons other than because he "earnestly believed Mr. Friend's conduct amounted to a violation of the interfering statute." *Compare* Def.s' MSJ 15 *with* Dep. of Michael Friend, Ex. 1, at 96:5–10, ECF No. 58-1. Though this reasoning for the arrest was attributed to an officer other than Defendant, such allegation, combined with the lack of probable cause for the interfering arrest, is enough for Plaintiff to survive summary judgment in that a reasonable juror could find that Defendant arrested Plaintiff for a purpose other than bringing Plaintiff to justice.

### V.    CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's motion for summary judgment is granted as to Counts One and Two.

2. Plaintiff's motion and Defendant's motion for summary judgment as to Count Three hereby are denied.

   a. On or before **August 31, 2024,** the parties shall file a motion for a scheduling order, proposing a trial schedule as to Count Three.

3. In light of this order, on or before **August 12, 2024,** the parties may move for a settlement conference before a United States Magistrate Judge.

**IT IS SO ORDERED** in Hartford, Connecticut, this 31st day of July, 2024.

_____
/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE